IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREATER NEW YORK MUTUAL INSURANCE COMPANY, *a/s/o* *R.P. Management, Inc.*, and *New S.P. Associates L.P., d/b/a Suburban Park Apartments*, | : : : : : | Nos. 4:08-CV-0327 4:08-CV-0387 Judge John E. Jones III |
| Plaintiff | : : | |
| v. | : : | |
| BELL SOCIALIZATION SERVICES, INC., *et al.*, | : : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

June 18, 2009

These matters, consolidated for purposes of discovery, are before the Court on the Motion to Quash Subpoena (Doc. 24) of non-party York/Adams Mental Health and Mental Retardation ("MHMR") and the Motion to Compel Discovery Responses (Doc. 27) of plaintiff Greater New York Mutual Insurance Company ("GNY").[1]  For the reasons set forth below, MHMR's motion will be granted, GNY's motion will be granted in part and denied in part, and these actions will be stayed pending appointment of a guardian ad litem for the defendants/third-party defendants Stephen Sponseller and Anna Carson.

---

[1] For the sake of convenience, unless otherwise noted, citations to docket entries are to the 4:08-CV-0327 action.  GNY has filed an identical motion to compel in the 4:08-CV-0387 action (Doc. 21).

## I. BACKGROUND

The following factual allegations are derived from the complaints in these two actions. Defendant Bell Socialization Services, Inc. ("Bell"), a private non-profit corporation, placed Steven Sponseller and Ann Carson, two "mentally challenged" adult individuals, in apartments at Suburban Park Apartments in York, Pennsylvania. On March 10, 2007, Carson started a fire in her apartment, which destroyed her unit and others, severely damaged a nearby building, and caused damage throughout the complex. On January 22, 2008, Sponseller started a fire in his apartment, which destroyed his unit, damaged other units and common areas, damaged a nearby building, and caused damage throughout the complex.

At the time of the fires, GNY provided insurance to R.P. Management, Inc., and pursuant to that insurance, made payments for the damage caused by the fires. In these actions, GNY, as subrogee of R.P. Management and Suburban Park Apartments, has asserted claims of breach of contract; negligence; negligent hiring, supervision, and retention; and gross negligence against Bell. Bell impleaded Sponseller and Carson.

On August 11, 2008, GNY propounded requests for production of documents to Bell, seeking, *inter alia*, all medical records of Sponseller and Carson . (Docs. 27-2, 27-3.) Bell objected to disclosing Sponseller's medical

records, stating that disclosure of such records is prohibited by Pennsylvania's Mental Health Procedures Act ("MPHA"), 50 Pa. C.S. § 7101, *et seq.* (Doc. 27-4 at 3.) Nevertheless, it appears that Bell did produce documents responsive that GNY's request. (*Id.*) Bell did not object to GNY's request for production of Carson's medical records, but noted that all of Carson's records were destroyed in the fire. (Doc. 27-5 at 5.) Again, however, it appears that Bell produced some documents responsive to GNY's request. (*Id.*) GNY has moved to compel the production of responsive documents withheld by Bell. (Doc. 27.) Bell has not responded to this motion.[2]

On September 19, 2008, GNY issued to MHMR two subpoenas seeking all records for Sponseller and Carson. (Doc. 26.) MHMR has moved to quash the subpoenas, arguing disclosure of its records is prohibited by the MHPA. MHMR also seeks an order directing that any privileged documents which have already been produced to GNY be returned. In response to this Court's order, MHMR produced copies of the at issue documents for *in camera* review and also produced a privilege log which indicates the basis for the claim of privilege as to each document.

---

[2] Pursuant to Local Rule 7.6, Bell is deemed not to oppose GNY's motion to compel.

## III. DISCUSSION

### A. Privilege Under the MHPA

MHMR has asserted that the documents responsive to GNY's subpoenas and requests for production are privileged under the MHPA. The purpose of the MHPA is to establish procedures which implement Pennsylvania's policy of seeking to assure the availability of adequate treatment to persons who are mentally ill. 50 Pa. C.S. § 7102. The act "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." *Id.* § 7103.

In furtherance of its goals, the MHPA provides broad protection to the confidentiality of records:

> All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>
> (1) those engaged in providing treatment for the person;
>
> (2) the county administrator, pursuant to section 110;
>
> (3) a court in the course of legal proceedings authorized by this act; and
>
> (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent.

*Id.* § 7111(a). Section 7111 "applies to *all* documents regarding one's treatment, not just medical records." *Zane v. Friends Hosp.*, 836 A.2d 25, 32 (2003). Unlike a conventional privilege protecting communications only if they satisfy certain elements, § 7111 "is much broader in scope, covering *any document* that concerns persons in treatment." *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 463 (3d Cir. 1996) (internal citation and punctuation omitted). The use of the word "shall" in § 7111 indicates that confidentiality is mandatory, not discretionary. *Zane*, 836 A.2d at 32. Unless one of the four exceptions applies, "[t]he release of the documents is contingent upon the person's written consent and the documents may not be released 'to anyone' without such consent." *Id.*

"The legislative purpose of section [7111] is to protect the confidentiality of the records of persons receiving treatment for mental illness." *Christy ex rel. Christy v. Wordsworth-at-Shawnee*, 749 A.2d 557, 559 (Pa. Commw. Ct. 2000). As the Pennsylvania Supreme Court has explained:

> The confidentiality of mental health records is the *sine qua non* of effective treatment. Its purpose is to enable effective treatment of those with mental illness by encouraging patients to offer information about themselves freely and without suffering from fear of disclosure of one's most intimate expressions to others and the mistrust that the possibility of disclosure would engender. The importance of confidentiality cannot

5

> be overemphasized.... The purpose of the Mental Health Procedures Act of seeking "to assure the availability of adequate treatment to persons who are mentally ill" would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings.

*Zane*, 836 A.2d at 33-34 (citations omitted). To safeguard confidentiality, "[t]he MHPA presents an absolute confidentiality privilege against the disclosure of documents that concern persons in treatment." *Hahnemann*, 74 F.3d at 464.

Consistent with the broad public purpose of the MHPA and the strong language of its confidentiality provision, Pennsylvania courts have construed § 7111 expansively. "In fact, with the exception of cases in which the statutory privilege has been waived by the patient, it seems that a Pennsylvania court has found in only one case that the protection conferred by section 7111 of the MHPA should give way." 5 Standard Pennsylvania Practice 2d § 2:18; *see also Zane*, 836 A.2d at 32 (collecting cases); *Hahnemann*, 74 F.3d at 464 (noting that "the MHPA is strictly construed by the Pennsylvania courts").

In these cases, GNY's subpoenas to MHMR sought "[a]ll records ... from any time" regarding Sponseller and Carson (Doc. 26 at 4, 7) and its request for production to Bell sought "[a]ll medical records ... from any time" regarding Sponseller and Carson (Doc. 27-2 at 5, 27-3 at 5). However, in response to MHMR's motion to quash, GNY states that, notwithstanding its discovery

requests, it "is not requesting records from the prison system or any involuntary or covered voluntary inpatient treatment center." Rather GNY now seeks only "records from the time period during which Sponseller and Carson lived on their own at Suburban Park." (Doc. 27-10 at 8.) GNY argues that, during this time, Sponseller and Carson were not receiving "treatment" at a "facility" as those terms are defined by the MHPA, and therefore, documents relating to these individuals during this period are not privileged from disclosure.

> The MHPA broadly defines treatment in the following terms:
>
> Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness. It shall be provided to all persons in treatment who are subject to this act. It may include inpatient treatment, partial hospitalization, or outpatient treatment. Adequate inpatient treatment shall include such accommodations, diet, heat, light, sanitary facilities, clothing, recreation, education and medical care as are necessary to maintain decent, safe and healthful living conditions.
>
> Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery.

50 Pa. C.S. § 7104. Elsewhere, the MHPA specifies that "inpatient treatment" includes "all treatment that requires full or part-time residence in a facility." *Id.* § 7103. "Facility" is in turn defined as "any mental health establishment, hospital,

7

clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." *Id.*

Pennsylvania courts have liberally interpreted the broad definitions of "treatment" and "facility" provided in the MHPA. For example, in *Allen v. Montgomery Hospital*, 696 A.2d 1175, 1179 (Pa. 1997), the Pennsylvania Supreme Court held that "treatment" includes medical care coincident to mental health care. In that case, the court held that doctors and hospitals who provide treatment of the mentally ill pursuant to a contract with a mental health care facility fall under an immunity provision of the MHPA which provides that, in the absence of willful misconduct or gross negligence, a "person who participates in a decision that a person be examined or treated under this act ... shall not be civilly or criminally liable for such decision or for any of its consequences," 50 Pa. C.S. § 7114. *Allen*, 696 A.2d at 1179. The court found that the broad definitions of treatment in the MHPA "demonstrate a clear public policy by the General Assembly to make adequate treatment available to mentally ill patients with the least restrictions to their person." *Id.* The Court noted that a narrow interpretation of the MHPA as applying only to treatment specifically directed at a mental illness would contravene the legislature's intent because:

8

> it could reduce or eliminate the willingness of doctors or hospitals to provide needed medical care to a mentally ill patient who is referred by a mental hospital for medical treatment. Even if doctors or hospitals still provided treatment for physical ailments in such a situation, it could lead such providers of medical care to minimize their risks by placing the mentally ill patients in a more restrictive environment than is necessary or adopting other precautionary measures which would increase the costs of the medical care provided to the mentally ill. Such a narrow interpretation would clearly contravene the purposes of the MHPA to provide adequate treatment to the mentally ill with the least restrictive physical restraints.

*Id.*

In *DeJesus v. United States Department of Veterans Affairs*, 479 F.3d 271 (3d Cir. 2007), the Third Circuit held that a transitional residential program for veterans provided inpatient treatment for purposes of the MHPA. The staff at the facility closely monitored residents, residents' ability to remain at the facility depended upon abiding by rules that limited their freedom and privacy, and the facility provided "24-hour access to mental health care, continued individual and group therapy, and lessons in the life skills necessary for a recovering substance-abuser with a history of mental instability to transition to life outside [the facility]." *Id.* at 285. Based on these facts, the court held that the community living facility was an "institution ... that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients" under the MHPA. *Id.* (quoting 50 Pa. C.S. § 7103).

9

In these cases, based on GNY's own allegations, Sponseller's and Carson's stay at Suburban Park falls within the definition of "treatment" at a "facility" under the MHPA. GNY alleges that Bell was the lessee of the apartments at Suburban Park and that Bell "placed" Sponseller and Carson in their respective units there. (Amend. Compl., Doc. 39, ¶¶ 7-8.) GNY alleges that Sponseller and Carson were "mentally challenged" individuals who were "under Bell's care, control, supervision, and oversight in Suburban Park." (*Id.* at ¶ 7.) GNY further alleges that "Bell was required to maintain a 24-hour presence at Suburban Park to monitor and supervise the activity of its mentally challenged club members," including Sponseller and Carson, and to "provide counseling and oversight, transmit and/or administer medication, respond to emergencies, assist with activities of daily living, provide transportation and ensure safety." (*Id.* at ¶ 9.)

Like the transitional residential program in *DeJesus*, Bell at Suburban Park was charged with closely monitoring and supervising residents, with concomitant limitation of their freedom and privacy, and Bell provided 24-hour counseling, health care, and assistance with activities in and transition to life outside the facility. Bell thus provided "diagnosis, evaluation, therapy, or rehabilitation needed ... to facilitate the recovery of a person from mental illness" and "care and other services that supplement treatment and aid or promote such recovery." 50

Pa. C.S. § 7104. Bell's facilities at Suburban Park are therefore an "institution ... or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons." *Id.* § 7103.

The reasoning of *Allen* also supports a finding that Bell's facilities at Suburban Park are covered by the MHPA. The "24-hour ... counseling" provided by Bell is arguably treatment specifically directed at mental illness. Even if it were not, however, the transitional services and assistance provided by Bell at Suburban Park implement the "clear public policy [of] the General Assembly to make adequate treatment available to mentally ill patients with the least restrictions to their person." *Allen*, 696 A.2d at 1179. If the MHPA's definition of treatment were interpreted to exclude services such as those provided by Bell at Suburban Park, the willingness of organizations like Bell to provide such transitional and rehabilitative services could be reduced or eliminated. *Id.* The success of moving institutionalized patients into community settings through programs such as the Community/Hospital Integration Projects Program ("CHIPP") would be severely jeopardized. *See Frederick L. v. Dep't of Pub. Welfare*, 422 F.3d 151, 157 (3d Cir. 2005) (describing CHIPP as "[t]he cornerstone of DPW's deinstitutionalization plan ... designed ... to reorient the focus of mental health services away from reliance on large mental health

institutions to community based treatment"). Even if such treatment were still provided, reading transitional services out of the scope of the MHPA would lead to such services being provided in more restrictive environments such as state mental hospitals. *See Allen*, 696 A.2d at 1179. This narrow interpretation of the MHPA is contrary to the plain language of the statute and "would clearly contravene the purposes of the MHPA to provide adequate treatment to the mentally ill with the least restrictive physical restraints." *Id.*

Moreover, GNY's argument that Bell is not a covered facility providing treatment under the MHPA is contrary to its asserted claims of gross negligence against Bell. The Pennsylvania Supreme Court has held that the MHPA's immunity provision, which limits liability, also expressly creates a duty in a Commonwealth party participating in a decision to examine, treat, or discharge a mentally ill patient to refrain from willful misconduct or gross negligence in its treatment and discharge decisions. *Goryeb v. Pennsylvania Dep't of Pub. Welfare*, 575 A.2d 545, 548-49 (Pa. 1990); *Sherk v. County of Dauphin*, 614 A.2d 226, 231-33 (Pa 1992). Based on *Goryeb* and *Sherk*, the Pennsylvania Superior Court has found a similar duty under an analogous provision of the Mental Health and Mental Retardation Act ("MHMR Act"), an act similar in structure and purpose to the MHPA. *F.D.P. v. Ferrara*, 804 A.2d 1221, 1233 (Pa. Super. Ct. 2002). In

these cases, GNY asserts claims against Bell for gross negligence under the MHPA and the MHMR Act. (Amend. Compl., Counts IV, V.) However, the duty to refrain from gross negligence, which GNY claims Bell breached, arises only if Bell is a facility providing treatment covered by the MHPA and the MHMR Act, *see DeJesus*, 479 F.3d at 283, contrary to what GNY argues on the present motions.[3]

For the foregoing reasons, the Court finds that Sponseller and Carson were person in treatment while at Suburban Park. Therefore, all documents concerning them must be kept confidential and are privileged from disclosure. MHMR's motion to quash will be granted, and MHMR shall not produce in response to GNY's subpoenas any documents concerning Sponseller or Carson during the time they were at Suburban Park.[4] GNY's motion to compel will be denied in part, and Bell shall not produce in response to GNY's discovery requests any documents concerning Sponseller or Carson during the time they were at

---

[3] Although it has not responded to GNY's motion to compel, Bell has asserted as an affirmative defense that it is immune from suit under the MHPA (Answer, Doc. 11 at 5), suggesting that Bell asserts that it is a facility covered by the MHPA. The Court expresses no opinion as to the merits of GNY's claims or Bell's defenses under the MHPA or the MHMR Act. The discussion of the acts in this opinion is addressed only to the question of whether the confidentiality provision of the MHPA precludes production of the materials sought by GNY, based on the record as it currently stands.

[4] Because GNY no longer seeks any other documents pursuant to its subpoenas, MHMR obviously need not produce such documents either.

Suburban Park. In addition, GNY shall return any document privileged under the MHPA, which has already been produced, to Bell or any other source from which it was received.

### B. Appointment of a Guardian Ad Litem

In its motion to compel, as alternative relief, GNY requests that the Court appoint a guardian ad litem for Sponseller and Bell who would be able to consent to disclosure of documents privileged under the MHPA. The Court will grant this request.

An individual's capacity is determined by the law of his or her domicile. Fed. R. Civ. P. 17(b)(1). In these cases, the record indicates that Sponseller's and Carson's state of domicile is Pennsylvania. Under Pennsylvania rules, an "incapacitated person" means "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety." Pa. R. Civ. P. 2051. Based on the evidence currently available, the Court finds that Sponseller and Carson fall within this definition of incapacity.

Under Rule 17, a court must make a two-part inquiry upon a finding of incapacity. First, the court must determine whether the individual has a duly

appointed represented under state law who may represent the individual's interest in the action. *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002). In these cases, there is no indication that a legal representative has been appointed for Sponseller or Carson under Pennsylvania law. Therefore, the Court must look to Rule 17(c) and determine whether to appoint a guardian ad litem or issue another appropriate order to protect the incompetent person who is unrepresented in the action. This decision is not based on state law, but on the need to protect the incapacitated party's interests. As Sponseller and Carson have been named as both defendants and third-party defendants in these cases, it is clear that no other party could adequately represent their interests, and it is necessary to appoint a guardian ad litem to do so. The Court will therefore appoint a guardian ad litem for Sponseller and Carson in these actions. The cases will be stayed while the Court identifies an appropriate guardian.

### C.     Service of Process

On a related note, the Court will address *sua sponte*, *see* Fed. R. Civ. P. 4(m), the sufficiency of service of Bell's third-party complaint and GNY's amended complaint on Sponseller and Carson. Bell has returned a waiver of service signed by Sponseller (Doc. 22). However, under Rule 4(c), only an individual subject to service under Rule 4(e), (f), or (h) may waive service. Fed.

R. Civ. P. 4(c)(1). An incompetent individual is not subject to service under any of those provisions. The waiver of service returned by Bell is therefore insufficient to effect service on Sponseller.

GNY has returned proof of service indicating that a process server personally served a copy of the summons on Sponseller and Carson by leaving it with an official at the York County Prison and Wernersville State Hospital respectively (Doc. 40; 4:08-CV-387 action Doc. 32). Under Rule 4(g), however, "an incompetent person in a judicial district of the United States must be served by following state law for serving a summons or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made." Fed. R. Civ. P. 4(g). Under Pennsylvania law, original process must be served within the Commonwealth only by the sheriff. Pa. R. Civ. P. 400. Thus, GNY's attempted service of its amended complaint by process server is insufficient to effect service on Sponseller or Carson.[5]

Although given the allegations in this case and GNY's and Bell's knowledge of Sponseller and Carson, it should have been well within their contemplation that these individuals would have to be served in accordance with

---

[5] Bell's service of its third-party complaint on Carson by the Berks County Sheriff appears to be valid service of process on Carson. (4:08-CV-387 action Doc. 19.)

the rules governing service on incompetent persons. Nevertheless, the Court will exercise its discretion under Rule 4(m) to extend the period of time in which Bell may serve Sponseller with its third-party complaint and in which GNY may serve Sponseller and Carson with its amended complaint. Bell and GNY should effect such service within 30 days after the Court's appointment of a guardian ad litem.

## IV. CONCLUSION

For the foregoing reasons, MHMR's motion to quash will be granted. GNY's motion to compel will be denied to the extent that Bell will not be compelled to produce documents concerning Sponseller and Carson. GNY's alternative request for appointment of a guardian ad litem for Sponseller and Carson will be granted. These actions will be stayed while the Court identifies a guardian. Finally, GNY and Bell will be granted an additional 30 days from the Court's appointment of a guardian to effect service on Sponseller and Carson.

**NOW, THEREFORE, IT IS HEREBY ORDER THAT:**

1. The Motion to Quash Subpoena (Doc. 24) of York/Adams Mental Health and Mental Retardation is GRANTED;

2. The Motions to Compel Discovery Responses (Doc. 27 in 4:08-CV-0327 and Doc. 21 in 4:08-CV-0387) of Greater New York

Mutual Insurance Company is GRANTED in part and DENIED to the extent indicated above;

3. Pursuant to Fed. R. Civ. P. 17(c), the Court will appoint a guardian ad litem for Steven Sponseller and Anna Carson;

4. These actions are STAYED pending the Court's appointment of a guardian ad litem; and

5. Within 30 days of the Court's appointment of a guardian ad litem, Greater New York Mutual Insurance Company and Bell Socialization Services, Inc. shall effect service on Steven Sponseller and Anna Carson as indicated above.

/s/ John E. Jones III
John E. Jones III
United States District Judge